UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

| | |
|---|---|
| ADAM WOOD, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>AANIIIH NAKODA FINANCE, LLC, d/b/a BRIGHT LENDING,<br><br>Defendant. | Case No.  4:25-cv-25-RGJ<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Adam Wood ("Plaintiff") brings this class action lawsuit on behalf of himself and all others similarly situated, by and through undersigned counsel, and hereby alleges the following against Defendant Aaniiih Nakoda Finance, LLC d/b/a Bright Lending ("Bright Lending" or "Defendant"). Facts pertaining to Plaintiff and his experiences and circumstances are alleged based upon personal knowledge, and all other facts alleged herein are based upon investigation of counsel and—where indicated—upon information and good faith belief.

## NATURE OF THE ACTION

1. On its website, Bright Lending presents itself as an alternative to big banks and check-cashing companies, representing themselves as an alternative to mainstream lending and espousing a mission to "[H]elp light the way for the 17+ million people who don't have access to short-term credit through conventional banks each year."[1]

---

[1] *See* https://brightlending.com/aboutus/

1

2. What their site doesn't say is that they take advantage of people at their most vulnerable, in desperate moments of financial hardship, and thumb their nose at the statutory laws of the Commonwealth of Kentucky by employing a scheme to charge the customers they say they treat with empathy and respect illegal usurious interest rates of almost 600 percent.[2]

3. To do this, Defendant represents that Bright Lending is a tribal lending entity that is wholly owned by the Fort Belknap Indian Community (the "Tribe"), a sovereign nation located within the United States of America.[3] In reality, Defendant operates a "rent-a-tribe" scheme in order to circumvent state usury laws, including the laws of the Commonwealth of Kentucky.

4. A rent-a-tribe scheme is colloquial phrase used to describe the business practices of non-tribal payday lenders, including Bright Lending, hiding behind the guise of a Native American tribe in order to avoid usury laws by invoking sovereign immunity.

5. Plaintiff Adam Wood brings this action to secure redress from predatory and unlawful loans issued and enforced by Defendant.

6. Plaintiff seeks a declaratory judgment that the loans are void under KRS 360.010 (Count I) and damages pursuant to KRS 360.020 (Count II) and KRS 367.110 (Count III).

**JURISDICTION AND VENUE**

7. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) as well as 1332(d) because this case is brought as a class action where the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class, is a citizen of a state different from Defendant.

---

[2] *See* https://brightlending.com/rates/
[3] *See* https://brightlending.com/aboutus

8. This Court has personal jurisdiction over Defendant because Defendant has intentionally directed its business activities in Kentucky, targeting the Kentucky market, and purposefully availed itself of the privilege of conducting business in this state, including by targeting Kentucky as a state in which to offer loans. In addition, the conduct underlying the claims that caused Plaintiff's injuries took place in Kentucky, that is, Defendant entering into and collecting payment on its usurious loans occurred in this state, which was foreseeable to Defendant.

9. Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because a substantial part of the events giving rise to this action occurred in this District, including entering into and collecting payment on the loans took place in this District.

## PARTIES

10. Plaintiff Adam Wood is a natural person and resident of Owensboro, Daviess County, Kentucky.

11. Defendant Bright Lending claims to be "incorporated under the laws of the Fort Belknap Indian Community of the Fort Belknap Reservation of Montana" and "wholly-owned by the Tribe".[4] On its website, Defendant Bright Lending lists its address as P.O. Box 578, Ft. Belknap Agency, Hays, MT 59527.

12. Defendant Bright Lending operates an online lending website, https://www.brightlending.com (the "Website"), which makes loans at interest rates exceeding 600% to consumers in many states, including Kentucky.

---

[4] *Id.*

## FACTS

13. Between September 2, 2022 and March 27, 2023, Plaintiff obtained the following loans from Bright Lending:

    a. September 2, 2022: Loan #1353701889 for $1,000 at 699.99% APR (Ex. 1)

    b. September 29, 2022: Loan #1362897912 for $1,250 at 599.99% APR (Ex. 2)

    c. October 28, 2022: Loan #1368509902 for $1,250 at 499.98% APR (Ex. 3)

    d. November 4, 2022: Loan #1370431922 for $1,250 at 499.99% APR (Ex. 4)

    e. November 30, 2022: Loan #1373571045 for $1,500 at 499.54% APR (Ex. 5)

    f. December 6, 2022: Loan #1375131602 for $1,750 at 499.99% APR (Ex. 6)

    g. December 12, 2022: Loan #1375972488 for $2,150 at 324.91% APR (Ex. 7)

    h. December 23, 2022: Loan #1378038109 for $2,450 at 324.99% APR (Ex. 8)

    i. March 27, 2023: Loan #1391785707 for $2,500 at 324.99% APR (Ex. 9)

    j. September 1, 2023: Loan #1421185744 for $2,000 at 499.99% APR (Ex. 10)

    k. September 11, 2023: Loan #1423231548 for $2,500 at 325% APR (Ex. 11)

14. Defendant claims to be an arm of the Tribe, but central aspects of its operations take place far from Tribal lands, including its lending services, web development, and marketing which are handled by BorrowWorks, a company located at 6445 Harris Pkwy, Fort Worth, TX 76132.[5]

15. Defendant regularly makes loans to individuals in Kentucky at usurious rates of as low as 400% and more than 600% and use the same standard form loan agreement.

16. The loans were obtained for personal, family, or household purposes and not for business purposes.

---

[5] *See* https://borrowworks.com

17. At no time has Defendant had a license from the Kentucky Department of Financial Institutions or a state or federal banking or credit union charter, entitling it to make loans to Kentucky residents at more than the proscribed statutory maximum of 8 percent.

18. Defendant nevertheless advertises and makes loans to Kentucky residents at rates greatly exceeding 8 percent.

19. Plaintiff signed the loan agreements electronically, while in Kentucky.

20. The funds were transferred electronically to Plaintiff's bank accounts in Kentucky.

21. Repayment was to be made by ACH debit from Plaintiff's bank account in Kentucky.

22. Plaintiff was a resident of Kentucky at all relevant times.

23. At no time did Plaintiff visit the State of Montana or any business premises of any Defendant in connection with the loans.

24. Bright Lending's Website states that it does allow access or accept applications from residents of all locations.[6]

25. Defendant intentionally violated Kentucky's rate limitations because it concluded Kentucky authorities were unlikely to take action to enforce their usury laws against them.

## KENTUCKY'S PROHIBITIONS ON PREDATORY LOANS
### Kentucky Revised Statutes Chapter 360

26. Effective July 14, 2018, KRS 360.010 governs the legal interest rate that may not be exceeded with respect to residents of the state. KRS 360.010 forbids, with limited exceptions that do not apply here, parties from agreeing to a per annum interest rate higher than 8%.

27. Under KRS 360.020, the knowing "taking, receiving, reserving, or charging of an interest rate greater than is allowed by KRS 360.010 … shall be deemed a forfeiture of the entire

---

[6] https://brightlending.com/rates/

interest which the note, bill, or other evidence of debt carries with it." Where greater interest has been paid, the statute provides for "twice the amount of interest thus paid from the creditors taking or receiving the same: provided, that such action commenced within two (2) years from the time that the usurious transaction occurred." KRS 360.020(1).

28. Any loans to Kentucky residents at more than 8% that are made by lenders violate KRS 360.010 and are subject to damages under KRS 360.020.

## INVALIDITY OF CLAIM OF TRIBAL IMMUNITY

29. In an attempt to evade prosecution under usury laws of states like Kentucky, online lenders frequently create an elaborate charade claiming their otherwise illegal businesses are entitled to the sovereign immunity of Native American tribes.

30. However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

31. To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough*, 629 F.3d at 1183, 1187-88.

32. These so-called "tribal lenders" do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, are conducted by nontribal

members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

33. Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes, and, therefore, are not shielded by sovereign immunity.

34. Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff*, 787 F.App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme, stating that sovereign immunity does not transform illegal loans into legal ones and that "reasonable people would know that collecting unlawful debt is unlawful").

35. Attempting to circumvent state interest caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC, 2024 U.S. Dist. LEXIS 155383 (S.D.N.Y Aug. 28, 2024); *aff'd by United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

36. A review of online resources shows that non-tribal people and entities are the primary beneficiaries of Defendant's lending operation. Namely, key employees of Island Mountain Development Group ("IMDG"), supposedly the Tribe's wholly owned development arm[7], are not located near the Tribe and appear to have no Tribal affiliation:

    a. Derek Cournoyer is listed as the Chief Operational Officer of IMDG. He lives in Ft. Lauderdale, Florida.[8]

---

[7] *See* https://www.islandmtn.com
[8] https://www.linkedin.com/in/derekcournoyer1/

  b. Taylor McCabe, the CEO of IMDG, and Richard Fox, the Human Resources Director at IMDG, live in Billings, Montana (approximately 202 miles from Tribal lands).[9]

  c. Raelin Selig is listed as the Marketing manager for IMDG. She lives in Spokane, Washington.[10]

37. Upon information and belief, off-reservation business operations, comprising substantially all of the company's functions, are conducted by and for the benefit of non-tribal members and investors.

38. The Tribe receives only a small fraction of each dollar while revenues flow to non-tribal persons and entities.

39. While the Tribe's names and the names of some officers appear in documents establishing the formation of the corporate charters under which Bright Lending operates, on information and belief, such documents were designed, written by, approved by, and crafted for the benefit of non-tribal beneficiaries.

40. According to its leaders and representatives, the Tribe is a remote economically depressed community with a small population, an agriculture-based economy, and an average income yearly income per person of about $12,000 as of 2019.[11]

---

[9] https://www.linkedin.com/in/taylor-mccabe-02187528 and https://www.linkedin.com/in/richard-fox-647a4015a/
[10] https://www.linkedin.com/in/raelin-selig-176727aa/
[11] *See Letter from Terry Brockie to the Honorable Jay Clayton, SEC Chairman,* (Sept. 24, 2019), https://www.sec.gov/comments/s7-08-19/s70819-6223006-192629.pdf ("The Fort Belknap Indian Reservation is geographically isolated in Montana, located forty miles south of the Canadian border and twenty miles north of the Missouri River. The Fort Belknap Indian Reservation encompasses an area consisting of 675,147 acres. The main industry is agriculture, consisting of small cattle ranches, raising alfalfa hay for feed and larger dry land farms. Fort Belknap has a tribal membership of 7,000 enrolled members, with a median income of less than $12,000 each.").

8

41. The Tribe has no significant assets to leverage as collateral for the multi-million dollar revolving lines of credit required to fund multiple online payday lending enterprises which lend upward of $100 million a year.

42. On information and belief, while the Tribe is the nominal owner of Bright Lending, covenants in the lines of credit used as working capital to fund loans require the Tribe to hire only investor-approved managers, underwriters, marketers, software vendors, and other service providers.

43. The loan covenants also require the Tribe to waive sovereign immunity with respect to the non-tribal investors, leaving the Tribe vulnerable to legal actions.

44. Thus, the Tribe exerts no control over the business, how it is operated, who it lends to, and so forth. Any tribal involvement does not go beyond the hiring of a handful of tribal members to work as phone customer service representatives or similar low-level jobs.

## CLASS ALLEGATIONS

45. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(2), on behalf of himself and the following class of similarly-situated persons:

> All persons residing in Kentucky who, within the relevant statutory period, entered into a loan agreement with Defendant and paid money pursuant to the agreement.

46. Plaintiff may alter the class definition to conform to developments in the case and discovery.

47. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

48. There are many questions of law and fact common to the claims of Plaintiff and the proposed members of the Class, and those questions predominate over any questions that may only

9

affect individual members. Common questions for the Class include but are not limited to the following:

    a. Whether the loans at issue are usurious under Kentucky law;

    b. Whether the loans at issue are void as contrary to public policy;

    c. Whether Defendant made deceptive, misleading, or false representations in connection with the loans;

    d. Whether Plaintiff and the Class may recover money paid to Defendant pursuant to any of the loans;

    e. Whether Defendant's conduct was willfully or knowingly unlawful.

49. Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources necessary to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

50. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

### COUNT I
### VIOLATION of KRS 360.010
### Declaratory Judgment
### *(On behalf of Plaintiff and Kentucky Class Members)*

51. Plaintiff repeats and re-alleges each allegation contained in the Complaint as if fully set forth herein.

52. An actual and existing controversy of a justiciable nature exists between the parties with respect to the issues set out herein within the scope and meaning of 28 U.S.C. § 2201.

53. Defendant contracted for and collected loans at more than 8% interest from Plaintiff and the class members, in violation of KRS 360.010.

54. In accordance with 28 U.S.C. §§ 2201 and 2202, Plaintiff is entitled to a declaration that these agreements are void and unenforceable against the Plaintiff and the class members.

## COUNT II
## VIOLATION of KRS 360.020
### (On behalf of Plaintiff and Kentucky Class Members)

55. Plaintiff repeats and re-alleges each allegation contained in the Complaint as if fully set forth herein.

56. Defendant has devised and engaged in a scheme to fund, issue, and collect usurious loans through a rent-a-tribe scheme.

57. Plaintiff has taken usurious loans from Defendant and was forced to personally guarantee these debts.

58. Defendant is not exempt from state usury laws, nor are the transactions that are the subject of this action exempt from state usury laws.

59. The interest charged by Defendant in connection with these transactions was in excess of the maximum interest rate permitted by KRS 360.010.

60. Plaintiffs have in fact paid Defendant interest in excess of the maximum interest rate permitted by KRS 360.010.

61. Defendant knowingly and willfully entered into the loans with usurious intent.

62. As a result of the foregoing illegal acts and practices, the Defendant has surrendered their right to collect any interest on any of these amounts.

## COUNT III
### VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT
### KRS 367.110, et seq.
*(On Behalf of Plaintiff & Kentucky Class Members)*

63. Plaintiff and the Class repeat and re-allege all other paragraphs of the Complaint as if fully set forth herein.

64. Defendant is a "person" for purposes of the Kentucky Consumer Protection Act ("KCPA"), KRS 367.110, et seq.

65. Defendant's conduct as alleged herein occurred in the conduct of trade.

66. The KCPA prohibits "unfair, false, misleading, or deceptive acts or practices in the conduct of any trade." Any person who "purchases or leases goods or services primarily for personal, financial, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by Ky. Rev. Stat. § 367.170, may bring an action under the Rules of Civil Procedure . . . ." KRS 367.220.

67. Defendant violated the KCPA by intentionally violating Kentucky's rate limitations and attempting to circumvent state usury laws by fraudulently and deceptively hiding behind tribal sovereign immunity. Defendant had an ongoing duty to Plaintiff and the Class to refrain from unfair and deceptive practices under the KCPA in the course of its business.

68. Plaintiff and the Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's unfair, fraudulent, and deceptive behavior.

69. Defendant's unfair, fraudulent, and deceptive conduct was either knowing, willful, and intentional, or, alternatively, demonstrated a lack of care, recklessness, or conscious disregard for the rights of Plaintiff and the Class, and thus Plaintiff and the Class are entitled to punitive damages.

70. Defendant is liable to Plaintiff and the class members for damages in amounts to be proven at trial, including attorney's fees, costs, and punitive damages, as well as injunctive relief enjoining Defendant's unfair and deceptive practices, and any other relief deemed just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Putative Class Members demand judgment in their favor against Defendant Aaniiih Nakoda Finance, LLC, d/b/a Bright Lending, and seek an order:

    a)    Certifying the proposed Class;

    b)    Appointing Plaintiff as Class Representative;

    c)    Appointing counsel for Plaintiff as Class Counsel;

    d)    Permanently enjoining Defendant from engaging in the unlawful practices;

    e)    Awarding Plaintiff compensatory, direct, consequential, statutory, and punitive damages, including prejudgment interest, in an amount to be determined at trial;

    f)    Requiring Defendant to pay Plaintiff's attorneys' fees, costs, and expenses; and

    g)    Granting such other and further relief as is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands that this matter be tried before a jury.

Dated: March 26, 2025

Respectfully submitted,

**/s/ Amanda M. Lockaby**
Matthew T. Lockaby
Amanda M. Lockaby
Lockaby PLLC
476 East High Street, Suite 200
Lexington, Kentucky 40507
Tele:   859.263.7884
Fax:    859.406.3333
Email: mlockaby@lockabylaw.com
            alockaby@lockabylaw.com


**/s/ Matthew J. Langley**
Matthew J. Langley
(*pro hac vice forthcoming*)
Almeida Law Group LLC
849 W. Webster Avenue
Chicago, IL 60614
Tele:   773.554.9354
Email: matt@almeidalawgroup.com

*Counsel for Plaintiff and the Class*